UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL DUANE HUNTER,<br><br>                    Plaintiff,<br><br>          v.<br><br>MICHELLE G. FEREBAUER, ROBERT<br>FEREBAUER, HUSBAND AND WIFE AND<br>THEIR MARITAL COMMUNITY, PATRICK<br>T. ROACH, DBA ROACH LAW OFFICES,<br>LLP, AND/OR ROACH AND BISHOP, LLP,<br>LAWRENCE LINCOLN AND PATRICIA<br>MCKAY, HUSBAND AND WIFE AND THEIR<br>MARITAL COMMUNITY, GREGORY P.<br>HAWKINS, BOTH INDIVIDUALLY AND<br>DBA, HAWKINS & SORENSON, LC,<br>AND/OR GREGORY P. HAWKINS, P.C.,<br><br>                    Defendants. | No.  CV-13-5020-EFS<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS TO DISMISS** |

Before the Court, without oral argument, are Defendant Gregory P. Hawkins' 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 12, and Defendants Michelle and Robert Ferebauer, Patrick T. Roach, Lawrence Lincoln and Patricia McKay, and Hawkins' 12(b)(6) Motions to Dismiss, ECF Nos 10, 48, 50, & 52. In addition to Hawkins' personal jurisdiction argument, Defendants claim that Plaintiff's claims must be dismissed because previous litigation decided these issues, and because Plaintiff's Amended Complaint is not sufficiently pled. Plaintiff Michael Duane Hunter opposes the

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 1

motions, contending personal jurisdictions exists and that the Amended Complaint sufficiently asserts eight claims against each of the Defendants: 1) common law conspiracy; 2) conspiracy against civil rights under 42 U.S.C. § 1985(3); 3) tortious interference with parental rights; 4) claims under 42 U.S.C. § 1983; 5) fraud; 6) constructive fraud; 7) outrage; and 8) negligent infliction of emotional damage.  ECF No. 31.  For the reasons set forth below, Defendants' motions to dismiss are granted.

**I.    BACKGROUND[1]**

**A.    Factual History**

Plaintiff is a Washington resident who claims to be the biological father of a female minor (hereinafter, "Baby") born in Utah on March 2, 2010.  The biological mother of Baby is Defendant Michelle Ferebaurer (hereinafter "M. Ferebaurer").  M. Ferebauer is married to Defendant Robert Ferebaurer (hereinafter, "R. Ferebaurer"), but it is undisputed that R. Ferebaurer is not the biological father of Baby. Although the Ferebaurers have been married at all times material to this case, they were estranged for an unidentified period of time.

In the summer of 2009, Plaintiff and M. Ferebaurer, who were both employed as engineers at Energy Northwest in Richland,

---

[1] The "background" section is based on the Complaint's, ECF No. 31, factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This court construes the pleadings in the light most favorable to the plaintiff and accepts all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 2

Washington, began a personal relationship that led to the conception of Baby in the State of Washington.    Plaintiff learned of M. Ferebaurer's pregnancy in July 2009, and at that time, both parties showed interest in attempting to have a family.    At some point between July 2009 and January 2010, however, M. Ferebaurer informed Plaintiff that she was talking to R. Ferebaurer about getting back together, and she did not want Plaintiff to be involved with the pregnancy.

On January 13, 2010, Plaintiff contacted M. Ferebaurer about Baby, and M. Ferebaurer informed Plaintiff that she had begun the process to have another couple adopt Baby.    Two days later, Plaintiff met with M. Ferebaurer and Defendant Patrick Roach, M. Ferebaurer's attorney.    During this meeting, Plaintiff signed a consent to adoption form, which Plaintiff later revoked on February 18, 2010.    Notice of this revocation was sent to Roach's office on that day, and Roach was made aware that Plaintiff wanted to raise Baby.    In response, M. Ferebaurer contacted Plaintiff in order to obtain consent to the adoption, but Plaintiff refused these requests.

On February 24, 2010, Plaintiff received an e-mail message from M. Ferebaurer which stated:

> Hunter,
>
> You have made my life very difficult here and I need some space.    I have decided to go to Utah to have the baby.    I have good friends there that I'd like to have with me. I'll contact you when I get back.
>
> Michelle.

Am. Compl. ¶ 20, ECF No. 31, at 25.    Plaintiff responded to this e-mail, and did not hear from M. Ferebaurer again for several months.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 3

Prior to this e-mail, Plaintiff was not aware that M. Ferebaurer was considering delivering Baby in Utah.

Baby was due on March 10, 2012, but was born March 2, 2010; the parental rights of M. Ferebaurer and Plaintiff were terminated on March 4, 2010 by order of a Utah State Court.  With the help of Defendant Gregory Hawkins, a Utah attorney, Defendants Lawrence Lincoln and Patricia McKay, both Washington residents, adopted Baby shortly after her birth.  Defendants Lincoln and McKay had been interested in adopting Baby since January 2010, and had been involved with M. Ferebaurer throughout the later stages of her pregnancy.  Outside of the February 24th e-mail, Plaintiff was not aware that any of this occurred.

**B.    Procedural History**

1.    <u>The Present Suit</u>

Plaintiff filed his original Complaint in this case on February 21, 2013, in which he named M. Ferebaurer, R. Ferebaurer, Roach and Roach Law Offices, Lincoln, McKay, Hawkins, and Hawkins & Sorenson, LC, as Defendants.  ECF No. 1.  That Complaint was amended on April 25, 2013.[2]  ECF No. 31.  In his Amended Complaint, Plaintiff brought the following claims against Defendants: 1) common law conspiracy; 2) conspiracy against civil rights under 42 U.S.C. § 1985(3); 3) tortious interference with parental rights; 4) claims under 42 U.S.C. § 1983;

---

[2]   The Amended Complaint was originally filed on April 22, 2013, ECF No. 18, but that document had to be resubmitted because counsel for the Plaintiff failed to properly sign and date this document.

5) fraud; 6) constructive fraud; 7) outrage; and 8) negligent infliction of emotional damage. *Id.* Generally, each of these claims is based on the theory that each of the named Defendants — individually and/or through conspiracy — intentionally and/or negligently acted to interfere with Plaintiff's fundamental rights in regard to Baby. Plaintiff asks the Court for the following relief: 1) $10,000,000 in compensatory damages for himself; 2) $10,000,000 for Baby and for Plaintiff's two other children (the step-siblings of Baby); and 3) attorney's fees and costs. *Id.*

In response to these claims, each of the Defendants has moved to dismiss. Defendant Hawkins claims that he is a Utah attorney who has no contacts or connections with Washington, so Plaintiff's claims against him should be dismissed for lack of personal jurisdiction under Rule 12(b)(2). ECF No. 12. Even if this motion is unsuccessful, however, Defendant Hawkins argues the claims against him should also be dismissed under Rule 12(b)(6) because Plaintiff's claims are insufficiently pled and have been dealt with in other jurisdictions. ECF No. 10. Defendants Ferebauer, Roach, and Lincoln and McKay also made similar Rule 12(b)(6) motions based on the lack of a cognizable claim. ECF No. 52 (Ferebauer); ECF No. 50 (Lincoln and McKay); ECF No. 48 (Roach). Each of these motions will be considered below.

### 2. Utah State Court Litigation

Defendant Hawkins — acting on behalf of Defendants Lincoln and McKay — filed an *ex parte* Verified Petition to Determine Parental Rights of Baby in the Third District Court in Salt Lake City on March

3, 2010.  ECF No. 1, Ex. 1.  This petition proposed termination of the parental rights of Defendants Ferebaurer and Plaintiff.  *Id*. at 66-67. The Utah court entered an order terminating those parental rights and granting temporary custody of Baby — pending finalization of the adoption — to Defendants Lincoln and McKay on March 4, 2010.  Order, ECF No. 11-1, Ex. 1.

Plaintiff did not seek to establish paternity in Utah prior to the Utah court's order terminating parental rights, but he did move to intervene in the adoption process after it had begun.  Order Den. Mot. to Intervene, ECF No. 11-1, Ex. 2.  On March 23, 2010, the Utah state court denied Plaintiff's motion to intervene, determining that he lacked standing to do so.  *Id*.  The Utah state court also determined that Plaintiff had unlawfully obtained documents from Defendants Lincoln and McKay's ICPC (Interstate Compact on the Placement of Children) filing.  *Id*.  The Utah State court order barred Plaintiff from using this information.  Plaintiff appealed, but voluntarily dropped his appeal before a decision was handed down.

    3.   <u>Washington State Court Litigation</u>

On March 3, 2010, Plaintiff moved to establish paternity in Franklin County Superior Court.  Am. Compl. ¶ 26, ECF No. 31.  The court determined that Utah state courts — not Washington courts — had jurisdiction over this issue.  Order Re Jurisdiction, ECF No. 11-1, Ex. 3.  As such, this motion was denied on June 24, 2010.  *Id*.  On September 23, 2011, Plaintiff appealed this decision in the Washington State Court of Appeals, Division III, where the case is currently pending.  Am. Compl. ¶ 26, ECF No. 31.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 6

1     4.    <u>Utah Federal Court Claim</u>

2         On August 17, 2010, Plaintiff filed a lawsuit in the Utah

3    Federal District Court.  ECF No. 11-1, Ex. 4.  In that lawsuit,

4    Plaintiff alleged many of the same causes of action that he filed in

5    this suit.  *Id.*  Plaintiff voluntarily dismissed the lawsuit on

6    October 28, 2011.  Order of Dis. ECF No. 11-1, Ex. 6.

7                      **II.  LEGAL STANDARDS**

8    **A.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal**

9         **Jurisdiction**

10        The Fourteenth Amendment's Due Process Clause guarantees that a

11   court lawfully exercise personal jurisdiction over a civil defendant.

12   *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 379 (9th Cir. 1990),

13   *rev'd on other grounds*, 499 U.S. 585 (year).  The plaintiff bears the

14   burden of demonstrating the existence of personal jurisdiction.  *Id.*

15   At the pre-discovery stage of litigation, the court accepts as true

16   the jurisdiction-related facts in the complaint.  *Pac. Atl. Trading*

17   *Co., Inc. v. M/V Main Exp.*, 758 F.2d 1325, 1327 (9th Cir. 1985); *see*

18   *also* 4 Wright & Miller, Federal Practice & Procedure § 1067.6 (3d

19   ed.).

20        In a diversity action in Washington, a federal court has

21   personal jurisdiction over a non-Washington-resident defendant if

22   permitted by Washington's long-arm statute, because Washington's long-

23   arm statute comports with the federal due-process requirements.  *See*

24   *In re W. States Wholesale Natural Gas Antitrust Litig.*, --- F.3d ----,

25   2013 WL 1449919, at *18 (9th Cir. Apr. 10, 2013); *Wash. Shoe Co. v. A-*

26   *Z Sporting Goods, Inc.*, 704 F.3d 668, 672 (9th Cir. 2012)

("Washington's long-arm statute extends jurisdiction over a defendant to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment."); *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990) ("A federal district court sitting in diversity has in personam jurisdiction over a defendant to the extent the forum state's law constitutionally provides.").

Under federal due-process principles and Washington's long-arm statute, a federal court must possess either general or specific personal jurisdiction over a non-resident defendant. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 2013 WL 1449919, at *18. General personal jurisdiction exists where the non-resident defendant has "substantial or continuous and systematic contacts with the forum state." *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1984). Specific personal jurisdiction exists if: 1) the defendant performed an act by which it purposefully availed itself of the privilege of conducting activities in Washington, 2) the cause of action arose out of the defendant's forum-related activities, and 3) the court's exercise of jurisdiction over the defendant is reasonable. *Shute*, 897 F.2d at 381.

**B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl.*

1   *v. Twombly*, 550 U.S. 544, 555 (2007).  Conversely, a complaint may not

2   be dismissed for failure to state a claim where the allegations

3   plausibly show that the pleader is entitled to relief.  *Twombly*, 550

4   U.S. at 555.  In ruling on a motion under Rule 12(b)(6), a court must

5   construe the pleadings in the light most favorable to the plaintiff

6   and accept all material factual allegations in the complaint, as well

7   as any reasonable inferences drawn therefrom.  *Broam v. Bogan*, 320

8   F.3d 1023, 1028 (9th Cir. 2003).

9                          **III.  DISCUSSION**

10  **A.    Defendant Hawkins' Rule 12(b)(2) Motion to Dismiss**

11       Defendant Hawkins' Rule 12(b)(2) motion to dismiss due to a lack

12  of personal jurisdiction must be granted.  Because Washington's long-

13  arm statute extends personal jurisdiction to the fullest extent

14  permitted by the Due Process Clause of the Fourteenth Amendment, *see*

15  *Van Steenwick v. Interam. Mgmt. Consulting Corp.*, 834 F. Supp. 336,

16  340 (E.D. Wash. 1993), the jurisdictional question in this case begins

17  and ends with a due process analysis.  Furthermore, because Plaintiff

18  concedes that Washington does not have general jurisdiction over

19  Defendant Hawkins, Pl.'s Resp. ECF No. 24, at 6, the only personal-

20  jurisdiction issue in this motion is whether due process allows this

21  Court to exercise specific jurisdiction over Plaintiff.

22       1.    <u>Minimum Contacts Analysis</u>

23       Under the Due Process Clause of the Fourteenth Amendment, the

24  minimum contacts required for specific personal jurisdiction "must

25  have a basis in some act by which the defendant purposefully avails

26  itself to the privilege of conducting activities within the forum

State."[3]  *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State."  *Burger King*, 471 U.S. at 475 (emphasis in original) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  The substantial connection "between the defendant and the forum . . . must come about by an action of the defendant purposefully directed toward the forum State."  *Asahi*, 480 U.S. at 112 (citations omitted) (emphasis omitted).

Defendant Hawkins argues that this motion to dismiss should be granted because Plaintiff's facts merely show he is a "Utah attorney . . . doing business in Utah at a Utah law firm representing clients in Utah" and "all acts allegedly taken by [Hawkins] occurred in Utah."  Def.'s Reply. ECF No. 33, at 2.  The facts alleged in Plaintiff's Amended Complaint that *could* feasibly contradict Defendant Hawkins' argument are: 1) Defendant Hawkins represented Defendants Lincoln and

---

[3]  Plaintiff argues that the "purposeful availment" test is reserved for contract suits, while the correct test to use in suits sounding in torts is "purposeful direction."  Pl.'s Resp. ECF No. 24, at 7.  Any distinction between these two tests, however, is contrived.  In certain cases, purposefully *directing* harm, effects, or actions toward the forum state can be sufficient to establish jurisdiction in that forum.  *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 788-89 (1984).  However, *directing* harm in this manner is just one possible way in which a plaintiff may *avail* himself to the laws of a forum state.  In other words, the terms are largely interchangeable, and will be treated as such for purposes of this Order.

McKay, who are Washington residents, Am. Compl. ECF No. 31, at 4; 2) Defendant Hawkins listed Plaintiff, a Washington resident, as the biological father in Utah Court documents, *id*. at 31, 32; and 3) Defendant Hawkins contributed to the termination of Plaintiff's parental rights, *id*. at 47-50. Even though these assertions are taken as true for the purposes of this Rule 12(b)(2) motion to dismiss, they are insufficient to establish personal jurisdiction over Plaintiff in this Washington-filed lawsuit.

Defendant Hawkins' representation of Defendants Lincoln and McKay does not establish minimum contacts in — or purposeful availment to — Washington. Nothing in the Amended Complaint establishes the fact that Defendant Hawkins knew that he was representing Washington residents, and even if he had known, that fact, in and of itself, would not satisfy the minimum contacts test. No facts suggest that Defendant Hawkins met with the other Defendants in Washington, made phone calls to the other Defendants in Washington, mailed any information to the other Defendants in Washington, or had any contact with Washington at all. All of Defendant Hawkins' actions occurred in Utah; therefore, the fact that Hawkins may have known that his clients were Washington residents is irrelevant.

Plaintiff's argument that jurisdiction is proper because Defendant Hawkins directed action and harm toward Washington by including Plaintiff's name on Utah court documents and terminating Plaintiff's parental rights is also not persuasive. Plaintiff states that he had the *belief* that Defendant Hawkins knew Plaintiff was a Washington resident, so Defendant Hawkins should have known that the

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 11

1  effects of his actions would have been felt in Washington.   Pl.'s

2  Decl. ECF No. 21 at 2, 3.   This statement is problematic for two

3  reasons: first, it is conclusory and establishes nothing more than the

4  fact that Defendant Hawkins had that belief; second, even if that

5  belief were supported with facts, this would still not establish

6  purposefully-directed action toward Washington by Defendant Hawkins.

7  If Plaintiff could show that Defendant Hawkins' intentional Utah

8  actions were "calculated to cause injury" in Washington, then

9  Plaintiff could establish jurisdiction. *See Calder v. Jones*, 465 U.S.

10  783, 791 (1984).   Defendant Hawkins, however, filed Utah court papers,

11  under Utah law, in a Utah proceeding, in order to create final action

12  in Utah.   Ultimately, Defendant Hawkins was an attorney representing

13  his clients in the Utah.   Defendant Hawkins did not intentionally

14  direct *anything* toward Plaintiff or Washington.   If this fact-pattern

15  is sufficient to establish jurisdiction in this case, solely because

16  the effects of Defendant's representation crept into the forum, then

17  attorneys in future cases could be subjected to jurisdiction in any

18  number of forums in which they have never had any contact whatsoever.

19  This is not a precedent that this Court is willing to set.

20      2.   "But for" causal analysis

21      Normally, once minimum contacts are established as absent or

22  deficient, a court's inquiry into personal jurisdiction is over.   *See,*

23  *e.g.*, *Leland v. De Havilland Aircraft Co. of Can., Ltd.* 987 F.2d 771,

24  3 (5th Cir. 1993) ("[i]f minimum contacts are not established, there

25  can be no personal jurisdiction").   But in this case, even if minimum

26  contacts were established by Plaintiff's Amended Complaint, personal

jurisdiction would not be appropriate because Plaintiff failed to establish a causal link between Defendant Hawkins' Washington-related activities and the asserted causes of action.    In order to establish this causal link, Plaintiff must show that "but for" Defendant's forum-related activities, the claim would not have arisen.    The torts in this case that Defendants Hawkins was involved in — assuming there were any at all — occurred in Utah.    The mere fact that documents generated by Defendant Hawkins in Utah ended up in Washington did not give rise to Plaintiff's claims.    As such, Plaintiff failed to meet this prong of the due process analysis as well, which gives this Court another reason to dismiss Defendant Hawkins from this litigation.[4]

> 3.    <u>Defendant Hawkins' request for attorney's fees</u>

Defendant Hawkins' request for attorney fees is granted.    RCW 4.28.185(5) states:

> In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

Under this statute, courts are allowed to award attorney's fees to defendants who — after being hailed into court under the long-arm statute — prevail on a 12(b)(2) motion to dismiss.    *Scott Fetzer Co.,*

---

[4]    As for the third prong of the due process inquiry — the "fair play" analysis — there seem to be arguments in favor of both sides.    The Court need not address this prong, however, due to the fact that the Plaintiff has not established minimum contacts or causation.

1   *Kirby Co. Div. v. Weeks*, 114 Wn.2d 109, 114 (1990).  Defendant Hawkins

2   meets these standards.  As such, the Court grants Defendant Hawkins'

3   request for reasonable attorney's fees and requests that Defendant

4   Hawkins submit evidence supporting his request for reasonable

5   attorney's fees so the Court can determine the amount that should be

6   awarded to him.

7   **B.   Defendants' Rule 12(b)(6) motions to dismiss**

8        The Rule 12(b)(6) motions filed in this case must be granted,

9   meaning all of Plaintiff's remaining claims must be dismissed.

10  Defendant Hawkins, Defendants Ferebauer, Defendant Roach, and

11  Defendants Lincoln and McKay each filed Rule 12(b)(6) motions to

12  dismiss.  Though each Defendant raises his or her own legal argument,

13  the issues raised and problems identified are largely congruent.

14  Furthermore, each one of Plaintiff's claims is directed at each of the

15  named Defendants, and each claim fails for similar reasons.  As such,

16  Defendants' motions will be addressed together, on a claim-by-claim

17  basis instead of a Defendant-by-Defendant basis.

18       Ultimately, each of Plaintiff's claim fail for one of two

19  reasons; either 1) the claim has been *effectively* barred by decisions

20  in previous cases that must be given full faith and credit, or 2)

21  Plaintiff  failed to plead the claim with particularity.

22       1.   Effect of the Utah and Washington state court litigation

23       This Court must give full faith and credit to the decisions of

24  state courts, 28 U.S.C. § 1738; *Kremer v. Chem. Const. Corp.*, 465 U.S.

25  461, 466 (1982), but that does not mean that Plaintiff's claims are

26  automatically precluded.  The Utah court clearly found that Plaintiff

is a "legal stranger" with no "legal interest" in Baby, ECF No. 11-1, Ex. 2, at 13, and Washington courts have not determined otherwise. That finding must be given full faith and credit by this Court. Therefore, for the purposes of this case, Plaintiff has no parental rights in regard to Baby. Furthermore, Plaintiff's assertion that he can, and will, establish biological parentage during trial is irrelevant. Even if Plaintiff was allowed to establish a biological link during a civil trial, that fact would not change the decision made by Utah — and thus far upheld by Washington — that he has no rights in regard to Baby.

Defendants unpersuasively argue that this effectively ends Plaintiff's case under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine prevents a plaintiff from seeking federal court review of a state court judgment. *Reusser v. Wachovia Bank*, 525 F.3d 855, 858-59 (9th Cir. 2008). However, Plaintiff has conceded at multiple points in his Amended Complaint that he is not seeking review of the Utah or Washington courts' decisions regarding the custody and parentage rights of Baby, and this Court need not review those decisions in order to decide this case. The Utah decision only concluded that Plaintiff had no right to intervene in the custody proceedings of Baby because he was a legal stranger to the child. ECF No. 11-1, Ex. 2, at 13. This decision is necessarily quite harmful to a number of Plaintiff's claims, but it does not preclude them as a matter of law under the *Rooker-Feldman* doctrine.

Additionally, the domestic relations exception to federal question jurisdiction does not apply to this case. That doctrine

generally precludes federal courts from exercising jurisdiction over cases in which the central issue concerns the "status of parent and child or husband and wife." *Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983).    However, this is a civil suit for damages, and the "status of parent and child" is not the central issue in this case; therefore, the domestic relations exception does not bar jurisdiction. Ultimately, neither the Utah court nor the Washington court made any determination in regard to Plaintiff's right to bring civil claims against Defendants for wrongful termination of parental rights, and if he was successful in this suit, the status of his parental rights would be unaffected.    As such, the preclusive doctrines Defendants identify are not a direct bar to the claims in this case.

    2.   Common law conspiracy

    Plaintiff's allegation that each Defendant acted in concert to deny him of his parenting rights is insufficiently pled.    A complaint must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Swierkiweicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).    To establish a conspiracy under the common law in Washington, the Plaintiff "must prove by clear, cogent, and convincing evidence that 1) two or more people combined to accomplish an unlawful purpose, or combined to establish a lawful purpose by unlawful means; and 2) the conspirators entered into agreement to

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS– 16

accomplish the conspiracy." *All Star Gas, Inc. of Wash. v. Bechard*, 100 Wn. App. 732, 740 (2000).  "Mere suspicion or commonality of interests is insufficient to prove a conspiracy." *Id.*  The problems with the facts alleged in Plaintiff's Amended Complaint are two-fold.  First, they are exactly the type of "naked assertions devoid of further factual enhancement," that the Supreme Court has found insufficient in an initial pleading. *Iqbal*, 556 U.S. at 678.  Second, even if they were not entirely conclusory, the facts that Plaintiff is able to identify do not establish an agreement, or an unlawful purpose.

In his Amended Complaint, Plaintiff uses loaded, conclusory language that is devoid of factual basis in order to allege a conspiracy.  Specifically, Plaintiff alleges that Defendants engaged in "calculated birthplace manipulation," Am. Compl. ECF No. 31, at 12; that they "knowingly and intentionally and/or negligently circumvented lawful jurisdiction[]/venue in Washington by manipulating the birth state of the child," *id.* at 29; and "Defendants, then in concert and as part of a collective effort and conspiracy, planned and carried out a scheme that would involve M. Ferebauer going to Utah for the purpose of delivering [] Baby there," *id.* at 42.  Plaintiff uses the language required to trigger conspiracy claims, but there are no facts driving these assertions.  Any number of people are necessarily going to be involved in an adoption, including attorneys, the biological parents, and the individuals wishing to adopt the child.  The fact that these people worked together during the adoption process, combined with

pleading    trigger    language    like    "conspired,"    "schemed,"    and
"calculated," is insufficient to establish a claim for conspiracy.

Furthermore, the facts Plaintiff did plead do not establish an
unlawful purpose.    Plaintiff's Amended Complaint establishes that
Defendants were in contact with each other, Defendant Roach advised M.
Ferebauer as her attorney, M. Ferebauer decided to have Baby in Utah,
Plaintiff was made aware of the fact that Baby would be born in Utah,
Defendants Lincoln and McKay lawfully adopted Baby in Utah, and
Defendant Hawkins represented Lincoln and McKay in the adoption
process.    Even if there was concerted agreement for M. Ferebauer to
have Baby in Utah in order to make it more difficult for Plaintiff to
assert his parental rights, that is not an unlawful purpose.
Plaintiff is clearly upset that Defendants chose this course of
action, but that does not make Defendants' actions unlawful.

3.    <u>Conspiracy under civil rights</u>

Plaintiff's 42 U.S.C. § 1985(3) claim for conspiracy under civil
rights — which is based on a theory of discriminatory animus directed
toward him as an unwed biological father — is insufficient for a
number of reasons.    First, § 1985(3) generally requires that a
plaintiff show "some racial, or perhaps otherwise class-based,
invidiously discriminatory animus behind the conspirators' action."
*Griffen v. Breckenridge*, 403 U.S. 88, 102.    Unwed biological fathers
have never been recognized as a protected class under § 1985, and even
if they had, Plaintiff has not plead any facts that would suggest that
Plaintiff was treated any differently by any of the Defendants than an
unwed biological mother would have been treated.    Second, a § 1985(3)

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 18

conspiracy claim "must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Id*. It has already been established that Plaintiff was lawfully deprived of his parental rights according to the Utah court, and Plaintiff concedes that he is not challenging that decision or the constitutionality of Utah's law. Without a facial or as applied challenge to the statutory scheme of Utah and the decision by the Utah court, Plaintiff cannot show that he was deprived of equal enjoyment of the laws. He had an opportunity to assert his rights in Utah, and failed to do so. Finally, as noted above, there are insufficient facts to establish the existence of a conspiracy in the first place, so this claim fails for all of the same reasons as the common law conspiracy claim.

4. Tortious interference with parental rights

Plaintiff's third cause of action, tortious interference with parental rights, is not clearly established as a cause of action in Washington law; even if it was, Plaintiff does not allege that he possesses court-established parental rights, which essentially precludes his claim. In order to argue that tortious interference is a claim in Washington, Plaintiff cites *Strode v. Gleason*, 9 Wn. App. 13 (1973). *Strode* created a cause of action in a parent for the alienation of the affections of a child. *Id*. at 20. Plaintiff's attempt to use this case to support his claim for tortious interference is not persuasive. No Washington case has applied *Strode* to a case involving the birth and adoption of an infant. As such, it is a stretch to say that *Strode* created the cause of action that Plaintiff attempts to assert in this case. Furthermore, even if there

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 19

was such a cause of action, the cases are distinguishable on more fundamental grounds.   The *Strode* plaintiff had clearly established legal parentage and custody,[5] whereas in this case, Plaintiff has not established biological parentage, legal parental rights, or custody.[6] Therefore, even if he could establish tortious interference as a cause of action in Washington — which this Court refuses to do in this case — his Amended Complaint would not be sufficient to survive Defendants' Rule 12(b)(6) motions.

   5.   <u>42 U.S.C. § 1983</u>

   Plaintiff's failure to identify any state action — or state actor — that caused his deprivation of civil rights means his 42 U.S.C. § 1983 claim fails to identify a cognizable claim.   Section 1983 prohibits action, under the color of state law, to deprive another individual of his civil rights.   42 U.S.C. § 1983; *Chudacoff v. Univ. Medical Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) ("[T]o establish § 1983 liability, a plaintiff must show both 1) deprivation of a right secured by the Constitution and laws of the

---

[5]   Even the case Plaintiff cites from West Virginia that allows this type of claim involved an established and legally-adjudicated biological parent's claims.   *Kessel v. Leavitt*, 511 S.E.2d 720, 735-36 (W.Va. 1998); *cert. denied Leavitt v. Kessel*, 525 U.S. 1142 (1999).

[6]   Plaintiff alleges he is the biological father of Baby, Am. Compl., ECF No. 31, at 2, and the Court must take this as true for the purposes of a Rule 12(b)(6) motion.   However, Plaintiff has never been legally declared as the biological father.   Even if Plaintiff can prove biological parentage in a civil trial, that would not make him the legally-adjudicated biological father of Baby and it would not alter the Utah court's decision to deny him parental rights.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 20

United States, and 2) that the deprivation was committed by a person acting under color of state law."). Plaintiff concedes that the only Defendant in this case who could feasibly be considered a state actor is Defendant Hawkins, and argues that the other Defendants can be brought in under § 1983 because of their conspiracy with Defendant Hawkins. However, Defendant Hawkins has already been dismissed from this action for a lack of personal jurisdiction, and Plaintiff's conspiracy claims are no longer standing. This is sufficient to eliminate Plaintiff's § 1983 claim. Even if this was not the case, however, Plaintiff's claim still fails because Defendant Hawkins is not a state actor.

A privately-retained attorney does not act under color of state law for the purposes of a § 1983 claim. *Briley v. State of Cal.*, 564 F.2d 849, 855 (9th Cir. 1977). However, Plaintiff argues that Defendant Hawkins is a state actor because he was appointed by the Utah court under U.C.A. 1953 § 78B-6-124 to take consents and relinquishments from birth mothers. There is no case law to support the claim that private attorneys acting under the authority of this statute are state actors. Furthermore, as Defendant Hawkins points out, the great majority of court-appointed attorneys are not considered state actors. *Tower v. Glover*, 467 U.S. 914, 919-20 (1984) (public defenders); *Taylor v. First Wyo. Bank, N.A.*, 707 F.2d 388, 389 (9th Cir. 1983) (guardians ad litem); RCW 2.42.120 (interpreters); RCW 64.55.120 (mediators); *Sutton v. Llewellyn*, 288 F. Appx. 411, 412 (9th Cir. 2008) (conservators). As an attorney authorized to take consents by Utah courts, Defendant Hawkins is no different. As such, Plaintiff

1  failed to identify any state actor who is a party to this suit.

2  Therefore, his § 1983 claim must be dismissed.[7] [8]

3      6.   <u>Fraud</u>

4      Plaintiff's fraud claim is also insufficiently plead.  Rule 9(b)

5  requires that the circumstances constituting fraud or mistake be plead

6  with particularity.  Fed. R. Civ. P. 9(b).  To establish fraud,

7  Plaintiff must demonstrate: 1) a representation of an existing fact;

8  2) its materiality; 3) its falsity; 4) the speaker's knowledge of its

9  falsity or ignorance of its truth; 5) his intent that it should be

10  acted on by the person to whom it is made; 6) ignorance of its falsity

11  on the part of the person to whom it is made; 7) the latter's reliance

12  on the truth of the representation; 8) his right to rely upon it; and

13  9) his consequent to damage.  *In re J.N.*, 123 Wn. App. 564, 574

14  (2004).

15      Plaintiff sets forth four different actions that could possibly

16  merit a claim for fraud.  They are: 1) Defendant Roach's statements to

17  Plaintiff about Utah law, 2) Defendant Roach's act of concealing

18

19  [7]  Plaintiff does raise some vague due process arguments in his response to
20  Defendant Hawkins' motion to dismiss.  *See* Pl.'s Resp. ECF No. 25, at
   16-17.  These arguments are confusing because Plaintiff has made clear
21  that he is not challenging Utah law under the Constitution, yet this due
   process argument hints at an as applied constitutional challenge.
22  However, this argument does not need to be addressed in detail because
   there are no state actors in this case.
23  [8]  At this point, both federal questions have been dismissed, and this
24  Court could dismiss this claim under Rule 12(b)(1) for lack of subject
   matter jurisdiction.  Because each of the claims can be dismissed on
25  other grounds, the Court will not pursue this option.

26

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 22

information from Plaintiff about Baby's whereabouts, 3) Defendant M. Ferebauer's e-mail, and 4) the inclusion of the incorrect birth date in one location on the Utah court documents.   Even when these statements are taken as true, they are insufficient to serve as the basis for Plaintiff's fraud claim.

Plaintiff's Amended Complaint states that certain false statements made to him by Defendant Roach fraudulently induced him to sign a waiver of his parental rights.   That waiver, however, was revoked prior to the birth of Baby.   Therefore, whatever statements Defendant Roach made that could have been fraudulent could not have contributed to the damage Plaintiff complains of in this case.

The case that Plaintiff cites to support his claim that Defendant Roach owed him a duty not to conceal evidence of Baby's whereabouts, the breach of which was fraudulent, *Kessel v. Leavitt*, 511 S.E.2d 720 (W.Va. 1998); *cert. denied Leavitt v. Kessel*, 525 U.S. 1142 (1999), is inapposite to this case.   In *Kessel*, a biological father got a court order establishing parentage and injunctive relief stating that the mother was not to give up the child for adoption. *Id.* at 735-36.   Under those circumstances, an attorney who conceals information from a biological father can be guilty of fraud, but that is not this case.   Plaintiff was not adjudicated as the biological father, and there was no such court order denying the right to adoption at play in this case.

The e-mail sent by Defendant M. Ferebauer is also not fraudulent.   The material fact contained in that e-mail is that M. Ferebauer planned to have Baby in Utah.   That fact was not false.

Plaintiff is upset because neither he nor his lawyer was aware of the legal consequences of such a statement, but that does not make such a claim fraudulent.

Finally, even if the inclusion of the incorrect birth date on the Utah court documents was intentional, Plaintiff has not shown that representation was material to the harm he complains of.  The Utah court references the correct birth date throughout their documents, *see, e.g.*, ECF No. 1, Ex. 1, and Plaintiff has no factual evidence in his pleadings that show the court relied on that misrepresentation. Furthermore, Plaintiff has not pled facts that show that *he* relied on this misrepresentation in any way, or that he had a right to rely on it.  If anyone was the "victim" of this statement, it would be the Utah court, so this argument should have been taken up during Plaintiff's adjudication of his parental rights in that court.

In sum, Plaintiff has not pled sufficient facts to satisfy the stringent standards of Rule 9(b) and establish a claim for fraud.

7.    <u>Constructive fraud</u>

Plaintiff's claim for constructive fraud is vague and fails to state any kind of cognizable claim.  Constructive fraud is "[c]onduct that is not actually fraudulent but has all the actual consequences and legal effects of actual fraud." *Green v. McAllister*, 103 Wn. App. 452, 468 (2000).  Washington case law on constructive fraud is under-developed, but it appears that there must be a breach of a fiduciary duty in order for a defendant to prevail on a constructive fraud claim.  *See id.*  Plaintiff argues that his constructive fraud claim mirrors his fraud claim, but instead of alleging intentional conduct,

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 24

1   he claims he is entitled to relief due to Defendants' negligent

2   conduct.  This argument is not persuasive.  Plaintiff has not clearly

3   alleged what conduct was negligent or what fiduciary duty was owed to

4   Plaintiff.  Perhaps the reason why Plaintiff has failed to do this is

5   because none of the Defendants owed him any fiduciary duty.

6   Regardless, this claim is insufficient as pled and must be dismissed.

7        8.  <u>Outrage</u>

8        Plaintiff's claim for outrage is lacking.  Liability for the

9   tort of outrage "arises only when the conduct is so outrageous in

10  character, and so extreme in degree, as to go beyond all possible

11  bounds of decency, and to be regarded as atrocious, and utterly

12  intolerable in a civilized community." *Waller v. State*, 64 Wn. App.

13  318, 336 (1992).  Plaintiff is understandably upset that he has thus

14  far been unable to play a role in Baby's life, but the facts alleged

15  in the Amended Complaint fail to support a claim for outrage, so this

16  claim must be dismissed.

17       9.  <u>Negligent Infliction of Emotional Damage</u>

18       The tort of negligent infliction of emotional damage does not

19  apply to the facts of this case.  In Washington, a claim for negligent

20  infliction of emotional damage arises "where a plaintiff witnesses the

21  victim's injuries at the scene of an accident [or] shortly after it

22  occurs and before there is material change in the attendant

23  circumstances.  *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 54

24  (2008).  This is clearly not the type of damages that Plaintiff

25  asserts in this case.  As such, this claim must be dismissed.

26  //


ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS- 25

1

### IV.    CONCLUSION

2          Each of Plaintiff's eight claims must be dismissed under Rule

3   12(b)(6).   Once full faith and credit is given to the decisions of

4   other courts, Plaintiff's Amended Complaint does not sufficiently

5   establish any claims upon which relief can be granted.   Additionally,

6   this Court does not have personal jurisdiction over Defendant Hawkins,

7   so he is dismissed from this lawsuit on this ground as well.    For

8   these reasons, each of the Defendants' motions for dismissal are

9   granted.

10         Accordingly, **IT IS HEREBY ORDERED**:

11         1) Defendants' Motions to Dismiss, **ECF No. 10, 12, 48, 50, & 52,**

12            are **GRANTED.**

13         2) **Judgment** is to be entered in Defendants' favor**.**

14         3) All pending hearings are **STRICKEN**

15         4) This file is **CLOSED**; however, Defendant Hawkins may file his

16            motion for attorney's fees within **14 days** of this Order. Any

17            motion for attorney's fees must be supported by appropriate

18            documentation, including declarations from at least two

19            attorneys attesting to the reasonableness of the claimed

20            hourly rate.

21         **IT IS SO ORDERED.**   The Clerk's Office is directed to enter this

22   Order and provide copies to all counsel.

23         **DATED** this  31ˢᵗ  day of July 2013.

24

                                 s/ Edward F. Shea
25            _____
                            EDWARD F. SHEA
                   Senior United States District Judge

26